**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUSAN GIORDANO, ANGELENE HAYES, YIANG-LIANG WANG, and ANJA BEACHUM on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAKS INCORPORATED, SAKS & COMPANY LLC, SAKS FIFTH AVENUE LLC, LOUIS VUITTON USA INC., LORO PIANA & C. INC., GUCCI AMERICA, INC., PRADA USA CORP., and BRUNELLO CUCINELLI, USA, INC.,<br><br>Defendants. | Case No. 1:20-cv-0833-MKB-CLP<br><br>Hon. Margo K. Brodie<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

ARGUMENT ....................3

I. THE CLAIM IS TIME BARRED. ....................3

A. No "Compelling Circumstances" Exist to Justify a Continuing Violation. ....................3

B. Plaintiffs Also Failed to Plead Any Overt Act During the Limitations Period. ....................4

1. Payment of Allegedly "Suppressed Wages" Is Not an Overt Act. ....................5

2. Alleged "Refusals to Hire Saks LREs" Are Not Overt Acts And, In Any Event, Did Not Occur During the Limitations Period. ....................7

II. PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE *PER SE* CLAIM. ....................8

A. Plaintiffs' Rimless "Hub-and-Spoke" Conspiracy is Deficient. ....................8

B. Plaintiffs' "Direct Evidence" of Individual Horizontal Conspiracies Fails. ....................9

C. Plaintiffs' Claim Must Be Tested Under the Traditional Rule of Reason. ....................12

III. PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE MARKET. ....................13

A. Plaintiffs Must Allege a Plausible Relevant Market to State a Claim. ....................13

B. The CAC Fails to Allege a Plausible Relevant Product Market. ....................14

C. The CAC Fails To Allege A Plausible Geographic Market. ....................15

IV. PLAINTIFFS FAIL TO ALLEGE HARM TO COMPETITION AS A WHOLE. ....................16

V. BRUNELLO CUCINELLI INDIVIDUAL REPLY ....................17

CONCLUSION ....................18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ....................6, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................... *passim*

*Bogan v. Hodgkins*,
166 F.3d 509 (2d Cir. 1999)....................13, 14

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
996 F.2d 537 (2d Cir. 1993)....................12

*Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*,
No. 15-cv-05488 (RJS), 2016 WL 5719790 (S.D.N.Y. Sept. 29, 2016) ....................16

*Concord Assocs., L.P. v. Entm't Props. Trust*,
817 F.3d 46 (2d Cir. 2016)....................15, 16

*Conley v. Gibson*,
355 U.S. 41 (1957)....................3, 9

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ....................8, 9

*Dominick v. Collectors Universe, Inc.*,
No. 2:12-cv-04782 (ODW), 2012 WL 4513548 (C.D. Cal. Oct. 1, 2012) ....................17

*In re European Gov't Bonds Antitrust Litig.*,
No. 19 CIV. 2601 (VM), 2020 WL 4273811 (S.D.N.Y. July 23, 2020) ....................18

*Frost v. LG Elecs. Inc.*,
No. 16-CV-05206 (BLF), 2017 WL 1425919 (N.D. Cal. Apr. 21, 2017) ....................10, 11

*Frost v. LG Electronics Inc.*,
No. 16-cv-05206 (BLF), 2018 WL 6256790 (N.D. Cal. July 9, 2018),
*aff'd sub nom. Frost v. LG Elecs., Inc.*,
801 F. App'x 496 (9th Cir. Mar. 3, 2020)....................18

*Garrison v. Oracle Corp.*,
159 F. Supp. 3d 1044 (N.D. Cal. 2016) ....................6, 7

*In re GSE Bonds Antitrust Litig.*,
396 F. Supp. 3d 354 (S.D.N.Y. 2019)....................18

*In re High-Tech Employee Antitrust Litig.*,
856 F. Supp. 2d 1103 (N.D. Cal. 2012) ....................11

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010)....................8

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
713 F. Supp. 2d 286 (S.D.N.Y. 2010)....................12

*Intel Corp. v. Fortress Investment Grp. LLC*,
No. 19-cv-07651 (EMC), 2020 WL 6390499 (N.D. Cal. July 15, 2020) ....................17

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ....................4

*Maxum Indem. Co. v. Oxford Interior Corp.*,
No. 18-CV-00948 (AMD)(SMG), 2020 WL 1140456 (E.D.N.Y. Mar. 9, 2020) ....................9

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ....................8

*O.E.M. Glass Network, Inc. v. Mygrant Glass Co., Inc.*,
436 F. Supp. 3d 576 (E.D.N.Y. 2020) ....................8

*Ohio v. Am. Express*,
138 S. Ct. 2274 (2018)....................16

*PepsiCo., Inc., v. Coca-Cola Co.*,
315 F.3d 101 (2d Cir. 2002)....................9

*Planetarium Travel, Inc. v. Altour Int'l Inc.*,
622 F. App'x 40 (2d Cir. 2015) ....................17

*In re Pool Products Distrib. Market Antitrust Litig.*,
940 F. Supp. 2d 367 (E.D. La. 2013)....................9

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*,
661 F. Supp. 2d 218 (E.D.N.Y. 2009),
*aff'd sub nom.* 391 F. App'x 59 (2d Cir. 2010) ....................18

*In re Ry. Indus. Employee No-Poach Antitrust Litig.*,
395 F. Supp. 3d 464 (W.D. Pa. 2019)....................11

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) ....................6, 7

*Turner v. McDonalds USA, LLC*,
No. 19-C-5524, 2020 WL 3044086 (N.D. Ill. Apr. 24, 2020)....6

*Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 436 (S.D.N.Y.),
*aff'd*, 579 F. App'x 7 (2d Cir. 2014)....7, 8

*U.S. Airways, Inc. v. Sabre Holdings Corp.*,
983 F.3d 43 (2019)....3, 5

*U.S. v. Grinnell Corp.*,
384 U.S. 563 (1966)....16

*U.S. v. Harris*,
838 F.3d 98 (2d Cir. 2016)....4

*Ulrich v. Moody's Corp.*,
No. 13-CV-00008 VSB MHD, 2014 WL 12776746 (S.D.N.Y. Mar 31, 2014),
*report and recommendation adopted as modified*, No. 13-CV-00008 VSB,
2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014)....10, 11

*United States v. Apple, Inc.*,
791 F.3d 290 (2d Cir. 2015)....11

*Virgin Atlantic Airways, Ltd. v. British Airways PLC*,
257 F.3d 256 (2d Cir. 2001)....16, 17

*W. Penn Allegheny Health Sys., Inc., v. UPMC*,
627 F.3d 85 (3d Cir. 2010)....6

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)....1

*Z Techs. Corp. v. Lubrizol Corp.*,
753 F.3d 594 (6th Cir. 2014)....4

**Other Authorities**

*Webster's Third New Int'l Dictionary of the English Language, Unabridged*
(1981)....3

*Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law*
(4th and 5th eds. 2013-2020)....4

**PRELIMINARY STATEMENT**

Defendants' Joint Motion to Dismiss the CAC ("Motion")[1] showed that Plaintiffs' sole claim is time-barred under the Clayton Act's four-year statute of limitations, and Plaintiffs cannot meet the Second Circuit's high standard for a "continuing violation." Plaintiffs knowingly sat on their rights and allege no qualifying overt acts by any Defendant during the limitations period. Plaintiffs also fail to state a plausible Section 1 claim given the CAC's (i) muddled allegations of separate one-way restraints that limited only the Brand Defendants' hiring of only Saks employees; (ii) inherently implausible relevant product and geographic market allegations for U.S. "Luxury Retail Employee ('LRE') services"; and (iii) bare conclusions of anticompetitive effect.

Plaintiffs' opposition brief (the "Opposition") uses 50 pages and 65 footnotes to try to salvage their claim. What in the CAC was a series of separate "agreements" between Saks and five Brand Defendants, Plaintiffs have clarified is an alleged "hub-and-spoke conspiracy" involving all Defendants. Alleged agreements that did *not* fix employee wages but merely restricted hiring are now somehow a *price-fixing* conspiracy. And six Defendants among all U.S. luxury retailers who were only vaguely alleged to be "dominant" employers of LREs now, in the Opposition, are said to be *monopolists*. (Opp. at 43-44.) But Plaintiffs' "overarching" conspiracy theory is still deficient and their unpled assertions to avoid the statute of limitations are properly disregarded. *E.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers.").

The statute of limitations remains a clear and insurmountable bar. Plaintiffs still do not dispute that their claim accrued more than four years before they filed suit or that they *knew* of their claim at the time, or that any compelling (or even unusual) circumstances are pled to justify

[1] Capitalized terms not defined herein have the same meaning used in Defendants' opening brief.

a continuing violation, as Second Circuit law requires. Plaintiffs' contention that they were free to sit knowingly on their rights for years, so long as they allege an overt act *might have occurred* during the limitations period, thus fails as a matter of law. Plaintiffs also cannot show "overt acts" after conceding, as they must, that payment of allegedly "suppressed wages" was a mere *effect* of the alleged conspiracy (Opp. at 18), and failing to cite any authority or make any allegations to support their claim that Defendants' supposed "acts of enforcement"—mere *inaction* on unsolicited resumes—were *overt* at all, or that any occurred during the limitations period.

Plaintiffs' Opposition confirms, moreover, that the CAC fails to properly plead any of the basic elements of a Section 1 claim. Plaintiffs confirmed that their allegations of separate bilateral agreements between Saks and each of the five (previously six with Fendi) individual Brand Defendants is meant to support a "rimless wheel" hub-and-spoke conspiracy, all in an effort to avoid application of the standard "rule of reason" test.[2] But such an alleged conspiracy is deficient as a matter of law. Plaintiffs' market allegations fare even worse. Plaintiffs concede they must describe a relevant market, but contend it need *not* be plausible (*e.g.* by accounting for all employers of LREs beyond ***just the six Defendants***), as if the *per se* test somehow circumvents basic pleading standards under *Twombly*. (*Id*. at 24-25.) And though they concede that "the relevant geographic market is . . . the area in which a potential seller may rationally look to sell her services" (*Id*. at 39-40), they fail to allege or even argue that an LRE "rationally look[s] to sell her services" throughout the entire United States. As a fallback, therefore, Plaintiffs contend that relevant market allegations are unnecessary because they allege "*direct evidence*" of anticompetitive harm to the (implausible) market *as a whole*. The law says otherwise, and in any

---

[2] As the name suggests, a "hub and spoke" conspiracy involves several agreements between individual entities (the spokes) and one common entity (the hub). To be a conspiracy, this "wheel" must have a "rim"—*i.e.*, the spokes must know about each other and have agreed to act in the same manner. There are no such allegations in the CAC.

event the CAC lacks any factual allegations of such direct harm.

Plaintiffs waive off Defendants' arguments as too "fact-specific" (*id*. at 1), invoking the obsolete *Conley v. Gibson* "no set of facts" standard (*id.* at 5). But Plaintiffs have it exactly backward. Defendants have shown that the CAC is fact-*deficient*, and thus fails to state a claim under the controlling *Twombly* "plausibility" test. For the reasons set forth in the Motion and as discussed below, Plaintiffs' claim should be dismissed with prejudice.

## ARGUMENT

### I. THE CLAIM IS TIME BARRED.

#### A. No "Compelling Circumstances" Exist to Justify a Continuing Violation.

Plaintiffs cite the "continuing violation" doctrine to try to rescue their otherwise time-barred claim. Plaintiffs do not dispute, however, that courts in this Circuit look unfavorably on the doctrine, applying it only in "compelling circumstances." (*See* Mot. at 11-13.) Instead, Plaintiffs argue that "compelling circumstances" exist whenever a plaintiff shows an overt act during the limitations period. (Opp. at 40, n. 53.) But that is not the law, and Plaintiffs cite no case finding "compelling circumstances" under like circumstances. To the contrary, the Second Circuit and courts in this District have rejected similar attempts to evade repose. (Mot. at 1, 11, 14 (citing *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 983 F.3d 43, 69 (2019), and *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 229 (E.D.N.Y. 2003)).) "Compelling," after all, has meaning—*i.e.*, "[f]orcing, impelling, driving." *Webster's Third New Int'l Dictionary of the English Language*, *Unabridged* (1981), at 463. Plaintiffs thus cannot claim that "compelling circumstances" means "any circumstances at all."

In fact, Plaintiffs' *actual knowledge* of their claim—far more than four years before they filed this lawsuit—bears heavily on whether "compelling" circumstances do, or can, exist. (*See* Mot. at 11-12.) Plaintiffs contest this point, relying heavily on *Klehr v. A.O. Smith Corp.*, 521 U.S.

179 (1997). (Opp. at 50.) But *Klehr*, a RICO case, is no rampart. The Court noted in mere dicta that "each overt act … starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." 521 U.S. at 189. This dicta from *Klehr*, however, does not describe the current legal landscape and therefore does not command deference. *See U.S. v. Harris*, 838 F.3d 98, 107 (2d Cir. 2016). Indeed, the same treatise that *Klehr* cited *for this very dicta* has since catalogued courts' "tendency toward increased strictness against plaintiffs who knew or should have known of a violation but delayed bringing their suit," explaining:

> The extent of a plaintiff's earlier knowledge is said to be irrelevant to the tolling question in the case of continuing violations. ***But in fact the most reliable way to predict outcomes is to separate situations where an injured plaintiff had actual knowledge of a violating act and had suffered sufficient injury (statute not tolled)*** from those where the plaintiff had no knowledge or its knowledge was incomplete or imperfect (statute tolled).

(*See* Hochstadt Reply Decl., Ex. A, Hovenkamp treatise, ¶ 320, at 2, 5 & n.25 (emphasis added).)[3]

Plaintiffs fail to cite any cases reading *Klehr*'s dicta to allow a plaintiff to invoke continuing violation principles when they had actual knowledge of their claims. *E.g., Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 603 (6th Cir. 2014) (quoting new edition of Hovenkamp treatise: limitations period "not extended" if plaintiff had "actual knowledge"). As explained in Defendants' Motion, Plaintiffs' actual knowledge of their claim, their decision not to sue, and the absence of "compelling circumstances" precludes a continuing violation here. (*See* Mot. at 10-13.)

### B. Plaintiffs Also Failed to Plead Any Overt Act During the Limitations Period.

Plaintiffs argue that the CAC's allegations of ongoing (i) "subcompetitive compensation" to LREs, and (ii) "refusals to hire Saks LREs" (Opp. at 41), constitute "overt acts" under the

[3] Plaintiffs quote *Wholesale Grocery* suggesting a bad result: parties could divide markets, "wait four years to raise prices," and then claim impunity on limitations grounds. (Opp. at 43.) But in that hypothetical, no antitrust injury occurs until prices are raised. The "danger" is defused by basic accrual principles. Indeed, the same paragraph in *Wholesale Grocery* confirms the existing legal landscape and Defendants' position—that once customers have "reason to know" of the violation and their damages, the "limitations period begins to run." 752 F.3d 728, 737 (8th Cir. 2014).

continuing violation doctrine. Plaintiffs are wrong on both counts.

### 1. Payment of Allegedly "Suppressed Wages" Is Not an Overt Act.

Defendants' Motion showed that Plaintiffs' allegation of "suppressed compensation" posits a mere ***effect*** of the supposed conspiracy, not an independent act or renewal of it. (Mot. at 14-15.) Plaintiffs expressly agree, alleging in the CAC that "the No-Hire Agreements ***had the effect of*** … suppressed compensation" "for Plaintiffs and the Class" (CAC ¶¶ 99, 103), and arguing the same in their Opposition. (Opp. at 11 n.10 ("restricting employee mobility through no-hire/no-poach agreements has the effect of suppressing compensation"); *id.* at 19 ("these compensation effects…apply to all LREs").) Indeed, Plaintiffs do not allege any agreement to restrain *wages*: they allege agreements to restrain *hiring*, with purported ***downstream effects*** on wages. Under the Second Circuit's decision in *Sabre*, this ends the matter. *See Sabre*, 938 F.3d at 69 (holding "performance of a contract [is] a manifestation of the 'overt act,' the decision to enter the contract, rather than an independent overt act of its own.").[4]

Plaintiffs' attempts to evade *Sabre* are futile. *Sabre* is not, as Plaintiffs contend, limited to its facts. (Opp. at 45.) The facts that Plaintiffs cite as prerequisites to apply *Sabre* were absent from the very case that *Sabre* quotes for its "overt act" rule. *Sabre*, 983 F.3d at 68 (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462 (6th Cir. 1996) (no agreement between plaintiff and defendant or passive receipt of proceeds)). Nor can Plaintiffs sidestep *Sabre* by (improperly) amending their pleading. They now assert their claim is tantamount to a "price-fixing conspiracy," and therefore enjoys the protection of *Klehr*'s statement (again, dicta in a RICO case) that "each sale to the plaintiff" during such a conspiracy is an "overt act." (Opp. at 41.) But the CAC expressly

[4] Plaintiffs also allege the bare conclusion, non-creditable under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), that the purpose of the alleged "No-Hire Agreements" was "to suppress the total compensation of their employees." (CAC ¶ 1.) Under *Sabre*, however, Plaintiffs' surmise about underlying purposes is immaterial. Rather, *Sabre*'s focus is on the alleged restraint on the one hand, and its purported effects on the other.

alleges the contrary—that Defendants did ***not*** agree to fix wages, which Plaintiffs admit "would be hopelessly complex and impossible to monitor, implement, and police." (CAC ¶ 104.)

Plaintiffs also newly claim that wage payments to LREs somehow constitute overt acts because "Defendants use their ***monopoly power*** to purchase at an artificially suppressed price." (Opp. at 43-44 (emphasis added).) But the CAC does not assert a monopolization claim or even contain the words "monopoly," let alone allege facts plausibly suggesting that Defendants wield monopoly (or, more accurately, monopsony) power in any supposed market. (*See infra* pp. 13-15).

Nor is it true that Defendants' cited no-hire cases rejecting the "depressed wages as overt acts" theory involved mere "pleading inadequacies." (Opp. at 44 & n.56.) The *Animation Workers* plaintiffs, for example, used the same argument Plaintiffs make—that injuries suffered from "artificially depressed compensation … are no different than consumers who suffer antitrust injury when purchasing artificially higher priced goods as a result of a price-fixing conspiracy." 87 F. Supp. 3d 1195, 1212 (N.D. Cal. 2015). The court expressly rejected this theory because it alleged at most a continuing harm, not a new and independent overt act. *Both* are required for a continuing violation. *Id.* at 1212-13.[5] And, here, Plaintiffs allege a continuing injury without any overt act.

Remarkably, Plaintiffs mainly cite cases from Circuits that *reject* the Second Circuit test. (Opp. at 41-42.) The Seventh Circuit allows a continuing violation based on a mere injury. (Mot. at 15 n.13.) Thus, Plaintiffs' citation of *Turner v. McDonald's USA, LLC*, 2020 WL 3044086 (N.D. Ill. Apr. 24, 2020), is irrelevant. Likewise, the Third Circuit decision in *W. Penn Allegheny Health Sys., Inc., v. UPMC*, 627 F.3d 85, 107 (3d Cir. 2010), expressly disclaims *Sabre*'s test. Plaintiffs also falsely argue that *Garrison* and *Ryan* do not require all Defendants to commit an overt act.

[5] Similarly, the *Garrison* and *Ryan* plaintiffs alleged suppressed wages during the limitations period. *E.g.*, *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1055 (N.D. Cal. 2016); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 875 (N.D. Cal. 2015).

(Opp. at 44 n.56.) *Garrison*, in particular, explained why it rejected the theory Plaintiffs espouse. 159 F. Supp. 3d at 1072 ("an overt act *by the defendant* is required") (emphasis in original).

**2. Alleged "Refusals to Hire Saks LREs" Are Not Overt Acts And, In Any Event, Did Not Occur During the Limitations Period.**

Plaintiffs argue that ***inaction*** on an unsolicited resume drop at a Defendant's store somehow constitutes an "overt act" of the alleged conspiracy. (Opp. at 49.) Plaintiffs contend that each such instance gives rise to a "reasonable inference that Plaintiffs were denied employment (and/or ignored by the Brand Defendants) because of the no-hire agreements." (*Id*.) But these instances allege ***no*** act by any Defendant, let alone an ***overt*** one. At bottom, Plaintiffs' argument is circular: their bare allegation of an ongoing conspiracy *is* their evidence that the conspiracy was ongoing. It would thus be ***unreasonable*** to infer an ongoing conspiracy simply because Plaintiffs were not hired. *See Twombly*, 550 U.S. at 549, 557 (requiring "some factual context suggesting [an illegal] agreement," not allegations that are "merely consistent" with such an agreement).

Plaintiffs also fail to allege that any Defendant's purported "refusal to hire" Plaintiffs took place *within* the limitations period. It is undisputed that every alleged "refusal to hire" Plaintiff Hayes occurred more than four years before her claim was filed. (*See* Mot. at 17; Opp. at 48, n.60-62.) The CAC contains only vague allegations regarding the timing of Defendants' alleged "refusals to hire" Plaintiffs Wang and Giordano, which fail to show that those alleged acts *actually occurred* within the limitations period. Plaintiffs argue they did enough by alleging date ranges (*e.g.*, "in February 2016"), and Defendants bear the burden to prove the negative—*i.e.*, that the alleged acts did *not* occur *after* February 14, 2016, the cut-off for Plaintiffs' claim. (Opp. at 48.) But the opposite is true: it is Plaintiffs' burden to "plausibly allege[] that they fall within an exception to the applicable statute of limitations." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429,

436 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).[6]

In any event, Plaintiffs allege they were told "flatly" of "strict" no-hire agreements that Defendants "have to follow" more than four years before filing the CAC, and that the decision was final. (CAC ¶¶ 115, 123, 161.) Because Plaintiffs allege that they knew Defendants would refuse to hire them, "subsequent unsuccessful efforts to deal" cannot restart the limitations period. *O.E.M. Glass Network, Inc. v. Mygrant Glass Co., Inc.*, 436 F. Supp. 3d 576, 589 (E.D.N.Y. 2020).

## II. PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE *PER SE* CLAIM.

### A. Plaintiffs' Rimless "Hub-and-Spoke" Conspiracy is Deficient.

Plaintiffs' Opposition demonstrates the overreach in Plaintiffs' allegation of an unpled "overarching" conspiracy among all Defendants. As Defendants' Motion highlighted, the CAC suffers from (i) the absence of even *one alleged communication or meeting* between or among Defendants, (ii) *any* allegedly suppressed employee wage or wage level, and (iii) Plaintiffs' admission that they need "discovery" to plead the alleged "agreement" in violation of *Twombly*. (*Id.* at 15, 23 (citing, *e.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming dismissal of conspiracy pled "in entirely general terms")).) Plaintiffs ignore these key deficiencies.

Instead, Plaintiffs clarify that they seek to allege a "hub-and-spoke" conspiracy: the five (previously six) individual "bilateral" agreements between Saks (the alleged "ringleader") and "each" of the Brand Defendants (the alleged "co-conspirators"). (Opp. at 10.) Under well-established law, however, there is no "hub-and-spoke" conspiracy without *both* (i) a common ringleader, *and* (ii) a "rim" of agreements between the other co-conspirators. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002); *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) (affirming Rule 12(b)(6) dismissal of "hub-

---

[6] Plaintiff Beachum's sole "refusal to hire" allegation is that she dropped off a resume at one Brand Defendant's store and did not hear back. (CAC ¶ 190.) For the reasons set forth above, this allegation by itself is insufficient.

and-spoke" conspiracy); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (same); *In re Pool Products Distrib. Market Antitrust Litig.*, 940 F. Supp. 2d 367, 393 (E.D. La. 2013) (same). *Cf. PepsiCo., Inc., v. Coca-Cola Co.*, 315 F.3d 101, 110 (2d Cir. 2002) (dismissing "hub-and-spoke" conspiracy claim where there was no direct communication between "spokes"). Plaintiffs' explication of the alleged conspiracy thus reveals an inherently implausible, legally deficient "rimless wheel," in which "various defendants enter into separate agreements with a common defendant, but . . . the defendants have no connection with one another, other than the common defendant's involvement in each transaction." *Dickson*, 309 F.3d at 203. In "rimless wheels," where the "spokes" have no alleged connection, there is no single conspiracy and no Section 1 claim. *Id.* ("rimless wheel" antitrust conspiracy theory is not actionable).

Plaintiffs do not address these cases (*see* Mot. at 24) and cannot dispute this legal principle.[7] Instead, they rely on the bald assertion that each Defendant entered into the alleged "No-Hire Agreement" "with knowledge of the other Defendants' participation." Such rank speculation is insufficient under *Twombly*. (*See* Mot. at 22.) *See Hess Dental Labs.*, 602 F.3d at 255 ("[T]o survive dismissal it does not suffice to simply say that the defendants had knowledge; there must be factual allegations to plausibly suggest as much.").

**B. Plaintiffs' "Direct Evidence" of Individual Horizontal Conspiracies Fails.**

Plaintiffs' so-called "direct evidence" of *per se* agreements among horizontal competitors is insufficient as well. (Opp. at 11.) Plaintiffs implicitly acknowledge this by asking the Court to rely on pre-*Twombly* cases using the "no set of facts" test from *Conley v. Gibson*, 355 U.S. 41, 45 (1957) to assess a motion to dismiss. (Opp. at 5.) That is not the applicable standard. "To plead a conspiracy," Plaintiffs must allege "enough facts to raise a reasonable expectation that discovery

---

[7] "[A] party 'concedes through silence' arguments made by its opponent that it fails to address[.]" *Maxum Indem. Co. v. Oxford Interior Corp.*, No. 18CV00948, 2020 WL 1140456, at *2 (E.D.N.Y. Mar. 9, 2020) (citations omitted).

will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.

Plaintiffs have not pled sufficient facts to meet this standard. Plaintiffs claim Defendants "admitted" the alleged agreements exist because two third-party recruiters purportedly knew of a "policy" impacting Saks retail employees. (Opp. at 12.) This is the same hearsay "recruiter" allegation the *Ulrich* and *Frost* courts rejected, as Plaintiffs know. (*Id*. at 21 n.25; *see* Mot. at 25-26 (citing *Ulrich v. Moody's Corp.*, No. 13-CV-00008, 2014 WL 12776746, at *26 (S.D.N.Y. Mar 31, 2014), *report and recommendation adopted as modified*, No. 13-CV-00008 VSB, 2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014) ("hearsay" from "an external recruiter" was insufficient); *Frost v. LG Elecs. Inc.*, No. 16-CV-05206, 2017 WL 1425919, at *1 (N.D. Cal. Apr. 21, 2017) ("a recruiter's statement … that '[t]he two companies have an agreement that they won't steal each other's employees,'" was insufficient)).) A bald hearsay allegation from unidentified third parties does not plausibly allege an *admission of anything by any Defendant*.

Plaintiffs' other allegations do not support the CAC's sweeping conspiracy claim. (Opp. at 11.) All are from just *one location*—the Saks department store in Beachwood, Ohio, *within which* Louis Vuitton is alleged to have operated a boutique. Plaintiffs now claim that Defendants "admitted" the existence of the "agreement" in 2015. But their actual pleadings show one Brand Defendant (Louis Vuitton) referenced a "*protocol* that *Saks employees* were *requested* to follow" (CAC Ex. B at 3 (emphasis added)), and that one Saks employee in that Ohio location told another that there was a "policy" in that store with certain exceptions (as originally alleged by Plaintiffs, *see* CAC at ¶ 120, not an "agreement" as labeled in their brief). These statements by local employees at one store do not allege an "admission" by any Defendant of a conspiracy, let alone a sprawling "overarching" conspiracy among all Defendants. *See Ulrich*, 2014 WL 4977562 at *17 ("Proving that one manager for one of the companies made such a statement, or that two other

executives sensed an 'unspoken rule,' fails to detail any particular action [by] either company, or come close to outlining the plausibility of an agreement between the two companies."). These isolated comments at one store outside the statute of limitations are not plausible allegations of a multi-year, nationwide "conspiracy" among all Defendants.[8]

Plaintiffs try to shoehorn their "overarching conspiracy" claim into "similarly alleged conspiracies" in other cases, but the comparisons serve only to highlight the CAC's threadbare allegations. (Opp. at 2.) Three of the four cited cases followed government enforcement actions, and pled the identities of "senior executives" who entered into the agreements and specific facts regarding how they "managed and enforced" them through formal procedures, secret code names, and "direct communication."[9] The CAC's allegations fall far short of the factual allegations pled in those cases and should be rejected as implausible at the pleading stage applying the same reasoning as in the *Ulrich* and *Frost* decisions. (Mot. at 26-27 (citing decisions).)[10]

Lacking "direct evidence" of a conspiracy, Plaintiffs try to manufacture new allegations by misrepresenting Defendants' argument and pivoting to purported "indirect evidence." They argue that because Defendants "admit Saks has distribution agreements with each Brand Defendant," the Court must infer that such arrangements "were necessarily preceded by communications" arguing that an "opportunity to conspire" can be circumstantial evidence of a conspiracy." (Opp. at 14-15.)

---

[8] The Opposition mischaracterizes the CAC and falsely states that a Loro Piana store manager allegedly "admitted to LP's no-hire agreement with Saks." (Opp. at 4 n.6). The alleged statements made no reference to any "agreement" and are at least equally (if not more so) consistent with an independent policy by Loro Piana. *See* CAC ¶¶ 159-61. Critically, these are the *only* factual allegations of any conduct by Loro Piana. (*See* Mot. at 47-48). Given the dearth of Plaintiffs' response to Loro Piana's specific arguments, Loro Piana does not submit a separate reply here, but rather simply points back to its individual motion arguments. (Mot. at 47-49). Plaintiffs have simply failed to establish that the allegations against Loro Piana are specific enough to state a claim against it.

[9] *In re Ry. Indus. Employee No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 486-93 (W.D. Pa. 2019); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175 (N.D. Cal. 2015); *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1184 (N.D. Cal. 2012) (same); *see also United States v. Apple, Inc.*, 791 F.3d 290, 302 (2d Cir. 2015) (investigation revealed numerous communications between executives of five major book publishers).

[10] Plaintiffs quote DOJ's statement that"[i]t is unlawful for competitors to expressly or implicitly *agree not to compete with one another*" (Opp. at 23 (emphasis added), but do *not* allege such an agreement between any Brand Defendants.

But this is not circumstantial evidence of a conspiracy; it is pure speculation. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). In any event, Brand Defendants' lawful sale of goods through Saks is *not* the alleged *anticompetitive* conduct. (Mot. at 20 (quoting *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984)) (requiring a "conscious commitment to a common scheme designed to achieve an *unlawful* objective") (emphasis added).) And the Second Circuit has held that "[t]he mere opportunity to conspire does not by itself support the inference that such an illegal combination actually occurred." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 545 (2d Cir. 1993). Plaintiffs thus fail to plead a conspiracy.

**C. Plaintiffs' Claim Must Be Tested Under the Traditional Rule of Reason.**

Plaintiffs do not deny that the "usual standard" applied to Section 1 claims is the rule of reason. (Mot. at 19 (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 882 (2007)). Plaintiffs allege five one-way bilateral agreements (Opp. at 10) and fully admit there was employee mobility (*id*. at 20; CAC ¶ 192). Their claim is that there should have been *more* mobility. That does not describe a "naked" restraint of trade and Plaintiffs cite no case applying the *per se* (or "quick look" rule of reason) to such a narrow alleged "agreement."

Moreover, Plaintiffs' bare assertion that the alleged "agreements" are between "horizontal competitors" is a "legal conclusion" that courts "do[] not accept as true on a motion to dismiss." *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 290 (S.D.N.Y. 2010); *see, e.g., Twombly*, 550 U.S. at 555 (rejecting mere "labels and conclusions"). Plaintiffs' characterization cannot be squared with what is *actually alleged* in the CAC: a "department store chain … (Saks) as well as five luxury brands (the Brand Defendants) that *sell their goods and apparel through department stores (including Saks)*" and through "*concessions at Saks stores*[.]" (CAC ¶ 21 (emphasis added); *see also id*. ¶ 28.) Indeed, Plaintiffs do not even address their

previous allegations labeling the Brand Defendants as the "Concessionaire" or "Leased" Defendants which "*rent space* in [] Saks stores and operate relatively independently: they hire their own staff, make their own inventory determinations, and determine the depth and timing of markdowns and pricing." (Beachum Compl. ¶ 3) (emphasis added). These relationships *as alleged* are plainly "vertical," and thus subject to rule of reason scrutiny. (*See* Mot. at 29.)

Moreover, Plaintiffs themselves—*not* Defendants—allege why hiring restrictions would be reasonably necessary to make Saks' vertical relationship with each Defendant more efficient. (*See id*. at 29-30.) Plaintiffs sidestep this issue to attack a strawman instead, pretending that Defendants, in arguing such agreements (if any existed) would be ancillary, have conceded the existence of agreements in the first place. (*See* Opp. at 27-29.) The reality is otherwise: Defendants showed that *if* the Court determined Plaintiffs did plausibly allege "agreements" that restrain trade, Plaintiffs' own allegations of the efficiency-creating effects of such an agreement do not permit *per se* treatment, but rather require application of the rule of reason.

## III. PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE MARKET.

### A. Plaintiffs Must Allege a Plausible Relevant Market to State a Claim.

Plaintiffs do not dispute that they must allege a relevant market—*both* a product market *and* a geographic market—to state a Section 1 claim, regardless of the applicable standard (*per se* or rule of reason). Plaintiffs, however, seek to lower their pleading burden, claiming they are required to "merely … *describe* the market" to state a *per se* claim, and need not do so plausibly. (Opp. at 25-26 (emphasis added).) Plaintiffs are wrong.

Clearly, an *implausible* description does not suffice. *Twombly*'s pleading rule governs Plaintiffs' claim regardless of the applicable antitrust liability standard. The Second Circuit's decision in *Bogan v. Hodgkins*, 166 F.3d 509 (2d Cir. 1999), bears directly on this issue. (*Compare* Opp. at 25, *with* Mot. at 31.) In *Hodgkins*, the Second Circuit held that "[i]t is an element of a per

se case to describe the relevant market in which [a court] may presume the anticompetitive effect would occur." *Id.* at 515. The case involved an agreement among an insurer's general agents not to recruit and hire each other's existing agents without the consent of the agent's current general agent. The court held that "the [challenged] Agreement's *anticompetitive effect* on the market for insurance sales agents [was] not obvious," and that plaintiffs "fail[ed] to establish a threshold case for per se treatment for *failure to specify the relevant market in which the horizontal agreement they allege could have an obvious anticompetitive effect*." *Id.* at 516 (emphasis added).

*Hodgkins* thus refutes Plaintiffs' claim that they need not allege a plausible relevant market in a *per se* case.[11] Plaintiffs argue for a limited reading of *Hodgkins* under *Gelboim v. Bank of Am. Corp*. (Opp. at 24.), but that case addressed antitrust *standing*, without addressing *Hodgkins* at all. 823 F.3d 759, 770 (2d Cir. 2016) ("assum[ing] the existence of a violation in addressing the issue of [antitrust] standing"). Plaintiffs' response thus misses the mark entirely.

### B. The CAC Fails to Allege a Plausible Relevant Product Market.

Stripped of legalese and bare conclusions, the CAC fundamentally alleges a "single brand" market, which is implausible as a matter of law. (*See* Mot. at 33.) Plaintiffs' Opposition does not dispute this rule or distinguish Defendants' authority. Instead, in a footnote, Plaintiffs assert that the relevant product market is defined not by the product itself, but by the available buyers for it—*i.e.*, each employer in the market for LRE services. (Opp. at 37 n.49.) Still, Plaintiffs allege only one "product" subject to any restraint: the services of Saks LREs. This is categorically a market for a "single brand" of LRE services. The CAC should be dismissed on this basis alone.

Regardless, Plaintiffs' claim of a relevant product market of *buyers* of LRE services is

[11] Plaintiffs falsely state that *Hodgkins* is the "single case" that Defendants cite "for the proposition" that a relevant market must be plausibly alleged under the *per se* standard. Not so. (*See* Mot. at 31 (citing, *e.g.*, *Downtown Music Publishing LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 765 (S.D.N.Y. 2020)).

equally implausible because it includes job opportunities only at Defendants' stores. Plaintiffs do not dispute that a plausible product market must address cross-elasticity of demand and include all reasonably interchangeable products, but nonetheless fail to reckon with their own allegations that Defendants compete with "***other department stores***, concessions, and standalone boutiques" in this product market, including such non-Defendant competitors as ***Armani, Burberry, Chanel, Dolce & Gabbana, Hermes, and Ralph Lauren***. (CAC ¶ 39 (emphasis added); Mot. at 34.)[12] Instead, Plaintiffs argue they have alleged that LREs are highly-trained in a manner "specific to luxury retail." (*See* Opp. at 37.) At best, this is a *non sequitur*. If the relevant product market is, as Plaintiffs argue, defined by the *buyers* of LRE services, then Plaintiffs cannot use the reasonably interchangeable *sellers* of LRE services to define the outer boundaries of that buyer-side market.[13]

**C. The CAC Fails To Allege A Plausible Geographic Market.**

Defendants' Motion explained that Plaintiffs "provided no basis to justify their proposed [nationwide] geographic market definition," and that such a broad market for LRE services defies common sense. (Mot. at 37-38 (quoting *Concord Assocs., L.P. v. Entm't Props. Trust*, 817 F.3d 46, 53 (2d Cir. 2016).) In response, Plaintiffs concede the relevant geographic market is "the area in which a potential seller [of LRE services] may rationally look to sell her services." (Opp. at 39.) Yet the Opposition does not argue, and the CAC does not allege, that LREs "rationally look to sell" their services nationwide or that Defendants rationally look to "buy" LRE services nationally.

Instead, Plaintiffs argue they have pled a nationwide market solely because they assert that

[12] Moreover, these are just some of the competitors in the luxury *fashion* industry. But employment opportunities for "Luxury Retail Employees" is, according to Plaintiffs' own allegations, not so limited: it includes all sellers of "luxury goods to consumers." (CAC ¶ 1; Opp. at 37 (LRE training develops a "skill set that is specific to luxury retail" generally). Thus, there are scores of reasonably interchangeable other buyers for LRE services ignored by Plaintiffs.

[13] Plaintiffs also try in vain to reconcile their LRE market definition with their allegations that Brand Defendants pay "considerably higher wages" than Saks. (*See* Opp. at 18 n.23; CAC ¶¶ 158, 166). But the Opposition's new and speculative explanation of what "likely caused" such a wage differential is not supported by any allegations in the CAC. And a significant wage differential is a strong indication of separate markets further rendering Plaintiffs' alleged market implausible. (*See* Mot. at 49 (citing caselaw)).

*Defendants' alleged agreements* purportedly applied throughout the United States. (*Id.*) This is both circular and irrelevant (and not alleged in the CAC). The sole case Plaintiffs cite is an inapplicable Section 2 monopolization case where the defendant's security business was organized nationally, justifying a nationwide market. *U.S. v. Grinnell Corp.*, 384 U.S. 563, 575 (1966). Moreover, Plaintiffs concede that the geographic market test is objective, but invite the Court to apply a subjective one: a market "based on *Plaintiffs' understanding* of Defendants' own unlawful agreements." (Opp. at 39 (emphasis added).) Plaintiffs can cite no authority for this approach.

Where, as here, a plaintiff's geographic market allegations are facially implausible, the Second Circuit and courts in this District dismiss antitrust cases at the pleading stage. *E.g.*, *Concord*, 817 F.3d at 53-54; *Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*, No. 15-cv-05488, 2016 WL 5719790, at *6 (S.D.N.Y. Sept. 29, 2016). The result should be the same here.

## IV. PLAINTIFFS FAIL TO ALLEGE HARM TO COMPETITION AS A WHOLE.

Plaintiffs claim that they need not allege a plausible relevant market because they allege harm to competition *as a whole*. (Opp. at 36.) Not true.[14] In any event, Defendants established that Plaintiffs have failed to allege such harm either directly or indirectly. (Mot. at 39-41.) Plaintiffs' Opposition abandons the latter, as the CAC contains ***no allegations of Defendants' market share***, individually or collectively. (*See* Opp. at 35-36.) And Plaintiffs have failed to allege the former as the CAC has no allegation of "reduced output, increased prices and decreased quality" either. *Virgin Atlantic Airways, Ltd. v. British Airways PLC*, 257 F.3d 256, 264 (2d Cir. 2001).

*First*, Plaintiffs cannot argue that preventing Saks's LREs from accessing a competitive employment market limited to Defendants is direct evidence of harm to competition on its own. (Opp. at 35.) This theory is not based on any of the Second Circuit factors for such a claim. *See*

[14] *See, e.g.*, *Ohio v. Am. Express*, 138 S. Ct. 2274, 2285 (2018) ("courts usually cannot properly apply the rule of reason without an accurate definition of the relevant market").

*Virgin Atl.*, 257 F.3d at 264. It is also tautological. *Every* antitrust claim alleges some restraint of trade in a market. If that were sufficient direct evidence of an adverse effect on competition as a whole, the test would be meaningless. For this reason, the Second Circuit has rejected Plaintiffs' argument: "The fact that the defendant's actions prevent a plaintiff from competing in a market is not enough, standing alone, to satisfy this initial burden of proof." *Id.*; *see also Planetarium Travel, Inc. v. Altour Int'l Inc.*, 622 F. App'x 40, 41 (2d Cir. 2015) (same).

*Second*, Plaintiffs cannot argue that by alleging "Saks pays LREs less than Brand Defendants do," the CAC "necessarily pleads" an adverse effect on "Saks's LREs' compensation." (Opp. at 35-36.) Plaintiffs allege no *facts* to support this argument; they assert only their *belief* that they "may have benefited from greater compensation" if hired by a Brand Defendant. (CAC ¶ 191.) Such vague, equivocal allegations are not plausible allegations of anticompetitive effect. *See Intel Corp. v. Fortress Investment Grp. LLC*, No. 19-cv-07651, 2020 WL 6390499, at *9 (N.D. Cal. July 15, 2020) (conclusory allegations of harm to competition are insufficient).

*Finally*, Plaintiffs cannot argue that an adverse effect on just one Defendant's employees alleges harm to competition ***as a whole***. Plaintiffs themselves insist that the relevant market encompasses all of Defendants' LREs. Plaintiffs' failure to plead allegations of any specific wage agreement or level, or even an exchange of wage information, cannot support a plausible inference of artificially low wages. *See Dominick v. Collectors Universe, Inc.*, No. 2:12-cv-04782, 2012 WL 4513548 at *7 (C.D. Cal. Oct. 1, 2012) (Section 1 claim dismissed for failing to allege that "higher prices" on one resale platform were higher than market prices on other platforms).

## V. BRUNELLO CUCINELLI INDIVIDUAL REPLY

Even as Plaintiffs concede their lack of any direct evidence as to Brunello Cucinelli, USA, Inc. ("BC"), they plainly also recognize the insufficiency of the CAC's only two allegations that do concern BC because their Opposition seeks to misrepresent them in order to overstate what was

actually alleged.[15] First, the Opposition repeatedly misrepresents that anonymous recruiters were alleged to have said anything to Plaintiff Giordano about any "no-hire agreement" involving BC. (Opp. at 5 n.6, 12, 14 n.15, 15 and 17 n.21). To the contrary, the CAC alleges only that such recruiters referenced unattributed "policies" that prevented them from placing her "with any brand carried by Saks," and, in fact, are not alleged to have said anything specifically about BC at all. (CAC ¶¶ 173-81.) Second, Plaintiffs similarly misrepresent that there was any allegation of a "refusal to hire" Ms. Giordano by BC. (Opp. at 12 n.11 and 16 n.19.) In fact, the CAC alleges no such refusal, but only that "she never heard back" from BC following her unsolicited submission of a resume. (CAC ¶¶ 165-70.)[16] As Plaintiffs clearly recognize, even taken as a whole, the CAC's allegations relating to BC cannot plausibly imply BC's participation in any alleged "overarching conspiracy" or other unlawful agreement, and so BC should be dismissed.[17]

## CONCLUSION

For the reasons set forth in Defendants' Motion and herein, Defendants respectfully submit that Plaintiffs' CAC should be dismissed with prejudice.

Dated: December 30, 2020 Respectfully submitted,

---

[15] Plaintiffs' Opposition conspicuously omitted any mention of BC from its repeated assertion of direct evidence in the form of supposed admissions of "no hire agreements." (Opp. at 1, 7, 8, 9, 11, 13, 14 and 17). No doubt seeking to obscure their lack of a response to BC's Individual Section of the Motion to Dismiss, rather than actually addressing BC's arguments, Plaintiffs buried their non-opposition across a series of footnotes. (*Id.* at nn. 6, 11, 19 and 21).

[16] Plaintiffs notably failed to rebut BC's citation of precedents establishing that the CAC's two actual allegations are insufficient to plausibly allege BC's participation in any unlawful agreement. *See Frost v. LG Electronics Inc.*, 16-cv-05206 (BLF), 2018 WL 6256790 at *6-7 (N.D. Cal. July 9, 2018), *aff'd*, 801 F. App'x 496 (9th Cir. Mar. 3, 2020)) (rejecting nearly identical allegation of anonymous recruiter statements as insufficient to state a "no poach" claim); *RxUSA Wholesale, Inc. v. Alcon Labs., Inc*., 661 F. Supp. 2d 218, 231–32 (E.D.N.Y. 2009), *aff'd sub nom*. 391 F. App'x 59 (2d Cir. 2010) (not responding to a plaintiff's application "cannot, without more, give rise to an inference of conspiracy").

[17] *See In re European Gov't Bonds Antitrust Litig.*, No. 19 CIV. 2601 (VM), 2020 WL 4273811, at *15 (S.D.N.Y. July 23, 2020) (dismissing conspiracy claim as to specific defendants where factual allegations were "inadequate to tie" them to any alleged agreement or unlawful conduct); *In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 364-65 (S.D.N.Y. 2019) (rejecting anonymously provided examples of supposed conversations and dismissing specific defendants where complaint amounted to just "plaintiffs' say-so" that they were involved in alleged conspiracy).

ATTORNEYS FOR SAKS INCORPORATED, SAKS & COMPANY LLC, SAKS FIFTH AVENUE LLC

By: /s/ *Eric S. Hochstadt*
David Lender
Eric S. Hochstadt
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
212-310-8000
david.lender@weil.com
eric.hochstadt@weil.com

ATTORNEYS FOR LORO PIANA & C. INC.

By: /s/ *Eva W. Cole*
Eva W. Cole
Kevin B. Goldstein
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
212-294-6700
EWCole@winston.com
KBGoldstein@winston.com

Robert E. Shapiro
Maile H. Solís
Owen H. Smith
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison St., Ste. 3900
Chicago, IL 60606
312-984-3118
312-629-5185
rob.shapiro@bfkn.com
maile.solis@bfkn.com
owen.smith@bfkn.com

ATTORNEYS FOR PRADA USA CORP.

By: /s/ *Mark H. Hamer*
Mark H. Hamer
Kristen E. Lloyd

ATTORNEYS FOR LOUIS VUITTON USA INC.

By: /s/ *Robert E. Shapiro*
Robert E. Shapiro
Maile H. Solís
Owen H. Smith
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison St., Ste. 3900
Chicago, IL 60606
312-984-3118
312-629-5185
rob.shapiro@bfkn.com
maile.solis@bfkn.com
owen.smith@bfkn.com

Eva W. Cole
Kevin B. Goldstein
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
212-294-6700
EWCole@winston.com
KBGoldstein@winston.com

ATTORNEYS FOR BRUNELLO CUCINELLI, USA, INC.

By: /s/ *Richard Brosnick*
Richard Brosnick
Jeffrey Kimmel
AKERMAN LLP
666 Fifth Avenue
20th Floor
New York, NY 10103
212-880-3834
richard.brosnick@akerman.com
212-259-6435
jeffrey.kimmel@akerman.com

ATTORNEYS FOR GUCCI AMERICA, INC.

By: /s/ *Corey Roush*
Corey Roush

BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
202-452-7077
mark.hamer@bakermckenzie.com
202-835-6298
kristen.lloyd@bakermckenzie.com

Nathan Oleson
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
202-887-4115
croush@akingump.com
202-887-4425
noleson@akingump.com