UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty-five.

PRESENT: PIERRE N. LEVAL,
SARAH A. L. MERRIAM,
MARIA ARAÚJO KAHN,
*Circuit Judges*.

_____

SUSAN GIORDANO; ANGELENE HAYES; YING-LIANG WANG; ANJA BEACHUM, on behalf of themselves and others similarly situated,

*Plaintiffs-Appellants*,

v.  23-600-cv

SAKS & COMPANY LLC; SAKS INCORPORATED; LOUIS VUITTON USA INC., LORO PIANA & C. INC; GUCCI AMERICA, INC.; PRADA USA CORP.; BRUNELLO CUCINELLI USA, INC.; SAKS FIFTH AVENUE LLC,

*Defendants-Appellees*,

MANDATE ISSUED ON 05/05/2025

FENDI NORTH AMERICA, INC.,

 *Defendant.*
_____

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | DANIEL J. WALKER, Berger Montague PC, Washington, D.C. (Joshua P. Davis, Berger Montague PC, San Francisco, CA; Innessa M. Huot, Faruqi & Faruqi, LLP, New York, NY, *on the brief*). |
| FOR DEFENDANTS-APPELLEES: | MARK A. PERRY, Weil, Gotshal & Manges LLP, Washington, D.C. (David J. Lender, Weil, Gotshal & Manges LLP, New York, NY; Eric S. Hochstadt, Orrick, Herrington & Sutcliffe LLP, New York, NY; Owen Smith, Barack, Ferrazzano, Kirschbaum & Nagelberg LLP, Chicago, IL; Corey W. Roush, Sidley Austin LLP, Washington, D.C.; James E. Tysse, Akin Gump Strauss Hauer & Feld LLP, Washington, D.C.; Mark H. Hamer, Kristen E. Lloyd, Baker & McKenzie LLP, Washington, D.C.; Richard Brosnick, Jeffrey A. Kimmel, Akerman LLP, New York, NY, *on the brief*). |
| FOR THE UNITED STATES DEPARTMENT OF JUSTICE AS *AMICUS CURIAE*: | MATTHEW WARING (Jonathan S. Kanter, Doha Mekki, Maggie Goodlander, David B. Lawrence, Eric D. Dunn, Peter M. Bozzo, Daniel E. Harr, Nickolai G. Levin, Stratton C. Strand, Brandon Storm, *on the brief*), United States Department of Justice, Antitrust Division, Washington, D.C. |

  Appeal from the March 21, 2023, judgment of the United States District Court for the Eastern District of New York (Brodie, *C.J.*).

**UPON DUE CONSIDERATION,** the judgment of the District Court is **AFFIRMED**.

Plaintiffs-appellants Susan Giordano, Angelene Hayes, Ying-Liang Wang, and Anja Beachum (collectively, "Plaintiffs") appeal from the District Court's dismissal of their amended putative class action complaint and entry of judgment in favor of defendants-appellees Saks Incorporated, Saks & Company LLC, and Saks Fifth Avenue LLC (collectively, "Saks") and defendants-appellees Louis Vuitton USA Inc., Loro Piana & C. Inc., Gucci America, Inc., Prada USA Corp., and Brunello Cucinelli USA, Inc. (collectively, the "Brand Defendants").

Plaintiffs allege that Saks and the Brand Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by entering into so-called "no-hire" agreements in which the Brand Defendants agreed they would "not hire Luxury Retail Employees who work for Saks or who were employed by Saks within the previous six months" unless managers from both companies approved the hire. App'x at 54. Plaintiffs contend that the no-hire agreements restrain competition in the nationwide Luxury Retail Employee ("LRE") market, with the effect of suppressing wages and limiting the professional mobility of LREs. We assume the parties' familiarity with the remaining facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"We review *de novo* a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all

3

inferences in the plaintiff's favor." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (citation and quotation marks omitted).

I.  **The Sherman Act: Rule of Reason versus *Per Se* Analysis**

Section 1 of the Sherman Act prohibits any "contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1.

> The Supreme Court has not taken a literal approach to this language, however, but instead has long recognized that Congress intended to outlaw only *unreasonable* restraints. Thus, the Court presumptively applies rule of reason analysis, under which antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful.

*Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 315 (2d Cir. 2008) (hereinafter "*MLB*") (citation and quotation marks omitted). "The rule of reason requires courts to conduct a fact-specific assessment of market power and market structure to assess the restraint's actual effect on competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018) (citation and quotation marks omitted).

However, some agreements "have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se*." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). *Per se* unreasonable restraints of trade are deemed "illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *MLB*, 542 F.3d at 315 (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)). "*Per se* treatment is appropriate once experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it." *State Oil Co.*, 522 U.S. at 10 (citation and

4

quotation marks omitted). "Restraints that are *per se* unlawful include horizontal agreements among competitors to fix prices or to divide markets*."* *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (citations omitted). By contrast, *vertical* restraints, often "imposed by a manufacturer or supplier upon its distributor retailer-customers . . . can significantly benefit competition and are permissible unless they violate the rule of reason." *Copy-Data Sys., Inc. v. Toshiba Am., Inc.*, 663 F.2d 405, 408 (2d Cir. 1981).

Plaintiffs argue on appeal that the no-hire agreements are *per se* unlawful because they amount to a horizontal market allocation, dividing LREs among luxury department stores and brands.[1] This argument fails for two reasons.

First, the amended complaint does not adequately allege that the agreements at issue here constitute *horizontal* price-fixing agreements; rather, the alleged restraint it describes is primarily *vertical*. Specifically, Plaintiffs allege that the Brand Defendants "sell their goods and apparel through department stores (including Saks), concessions (including concessions at Saks stores) and their own standalone boutiques." App'x at 42. Saks, in turn, "endeavors to maintain a . . . luxury shopping experience for its department store customers, launching Brand Defendants' concessions at their Saks stores, selling the Brand Defendants' goods in Saks stores at which the Brand Defendants do not have concessions, and by selling other, competing luxury brands." *Id.* at 43. LREs employed

---

[1] If a plaintiff were to plausibly allege "that defendants actually formed an agreement to fix" salaries in a given market, the "*per se* rule would likely apply" to such "a horizontal price-fixing agreement." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).

directly by Saks are part of this model: "Defendants and customers expect Luxury Retail Employees to be knowledgeable about the particular products each Defendant manufactures and/or sells, as well as current trends." *Id.* at 44. Moreover, LREs employed by Saks may be "assigned to" a specific Brand Defendant's in-store boutique or concession. These Saks employees "develop[] considerable luxury goods product knowledge that is valuable to luxury goods retailers such as the Brand Defendants." App'x at 68. The LREs therefore directly participate in the vertical arrangement between Saks and the Brand Defendants, enabling Saks to effectively sell Brand Defendants' products within its stores. Notwithstanding that Saks and the Brand Defendants are also horizontal competitors in the LRE market, the restraint at issue – a mobility and compensation restriction on the Saks LREs, who are essential to the sales of the merchandise at Saks supplied by the Brand Defendants – primarily concerns the vertical relationship between them. This largely vertical arrangement between Saks as a retailer and Brand Defendants as suppliers does not automatically trigger *per se* review, even though Saks and the Brand Defendants also compete horizontally. *See Borozny v. Raytheon Techs. Corp.*, No. 3:21CV01657(SVN), 2023 WL 348323, at *6-8 (D. Conn. Jan. 20, 2023) (applying *per se* review where the restraint alleged was *entirely* horizontal, and not interconnected with any vertical relationship among the participants).

Second, courts do not have "considerable experience" with this type of arrangement, in which companies whose goods are distributed in a department store and who rent floor space from that store agree not to hire current or recently departed employees of the department store who have been trained by the department store to sell

6

the companies' goods. *Leegin*, 551 U.S. at 886 (instructing that "the *per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue"). We cannot readily determine whether the no-hire agreements invariably suppress competition or whether they have procompetitive benefits.

Accordingly, *per se* treatment is not appropriate here. We therefore proceed to analyze Plaintiffs' allegations under the rule of reason.

## II. Application of the Rule of Reason to the Amended Complaint

To state a claim under the rule of reason standard, the "plaintiff bears the initial burden of showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." *Cap. Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993); *see also K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir. 1995) (instructing that "the plaintiff must show more than just that he was harmed by defendants' conduct"). Thus, to survive a motion to dismiss, "[a]n antitrust plaintiff must allege not only cognizable harm to herself, but an adverse effect on competition market-wide." *Todd*, 275 F.3d at 213. Such an adverse effect can be shown directly, through evidence of "reduced output, increased prices, or decreased quality in the relevant market," or indirectly, through "proof of market power plus some evidence that the challenged restraint harms competition." *Am. Express*, 585 U.S. at 542. "The fact that the defendant's actions prevent a plaintiff from competing in a market is not enough, standing alone, to satisfy

this initial burden of proof." *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 264 (2d Cir. 2001).

Plaintiffs allege that "Saks is part of a retail conglomerate that employs approximately 40,000 employees worldwide, including thousands of Luxury Retail Employees at Saks stores in the United States." App'x at 46. Accordingly, they assert, the relevant market for purposes of their Sherman Act claim is the national market for luxury retail employees.[2]

Plaintiffs' amended complaint, however, fails to plausibly allege anti-competitive effects *on the national LRE market*. The amended complaint alleges in a purely conclusory fashion that Plaintiffs' own suppressed wages and decreased mobility "spread through the market for Luxury Retail Employees." App'x at 56. But the amended complaint contains no specific allegations regarding the suppression of compensation or mobility among LREs "market-wide," that is, nationally, among all businesses employing such workers. *Todd*, 275 F.3d at 213. Indeed, as the District Court noted, Plaintiffs cannot deny (and in fact tacitly acknowledge) that there are numerous luxury brands and department stores participating in the nationwide LRE market *other than* Saks and the five specific brands named as defendants and alleged to be party to the agreements. *See* App'x at 251 n.27. There is no specific allegation that other participants in the relevant market are affected by the arrangement alleged in this case. Plaintiffs, having expressly agreed that the relevant market consists of *all LREs nationwide*, must adequately allege

---

[2] The District Court found that Plaintiffs' amended complaint "plausibly defined a nationwide geographic market." App'x at 249.

"an adverse effect on competition market-wide." *Todd*, 275 F.3d at 213. They have not done so.

Furthermore, the amended complaint fails to allege facts supporting an inference that the agreements inflict sufficiently substantial harm even on the Saks LREs directly covered by them. The impact of such an agreement on the employment prospects of covered employees is a function of the ratio of the number of employment opportunities foreclosed by the agreements to the number of employment opportunities that remain open, unaffected by the agreements. If the number of employment opportunities that remain available, unaffected by the agreements, is sufficiently high in relation to the number foreclosed, the harm suffered even by the directly-affected Saks LREs will be small. The higher the number of employment opportunities foreclosed, in relation to the number that remain open, the greater the harm. The amended complaint provides no meaningful information about the LRE positions at other retailers remaining open to covered LREs. Without allegations of facts or even approximations with respect to both sides of the ratio – or some other basis for inferences as to the substantiality of the injury – the amended complaint has failed to satisfy the requirements of *Twombly*.

Because the failure to plausibly allege market-wide harm is fatal to a Section 1 claim, *see Todd*, 275 F.3d at 213; *Cap. Imaging Assocs.*, 996 F.2d at 547 (observing that "without a showing of actual adverse effect on competition, a plaintiff cannot make out a case under the antitrust laws" (citation and quotation marks omitted)), the District Court appropriately dismissed Plaintiffs' amended complaint.

9

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit